**DAVID J. HOLDSWORTH** (4052)
Attorney for Plaintiff
9125 South Monroe Plaza Way, Suite C
Sandy, UT  84070
Telephone (801) 352-7701
Facsimile (801) 567-9960
david_holdsworth@hotmail.com

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | | |
|---|---|---|
| AMY FLETCHER, | : | **COMPLAINT** |
| | : | **(JURY TRIAL DEMANDED)** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DISCOVER FINANCIAL SERVICES, | : | Civil No.: 2:20-cv-00512-DAO |
| | : | |
| Defendant. | : | Magistrate Judge Daphne A. Oberg |

Amy Fletcher, Plaintiff herein, complains of Discover Financial Services, named as Defendant herein, demands trial by jury and files the Complaint alleging claims of discrimination in employment and retaliation as follows:

## I.  PARTIES, JURISDICTION AND VENUE

1.     Plaintiff Amy Fletcher (hereinafter "Ms. Fletcher" or "Plaintiff") is a resident of the State of Utah.

2.      The Defendant is Discover Financial Services (hereinafter "Discover" or "Defendant").  At all times relevant hereto, Discover employed 15 or more employees.

3.      The Court has jurisdiction of this case pursuant to federal question — namely, the interpretation and application of the Americans with Disabilities Act, a amended.

4.      Venue in the federal district of Utah is proper in that the actions and decisions giving rise to the causes of action alleged herein occurred in this federal district.

## II.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.      On July 6, 2018, Ms. Fletcher filed a Charge of Discrimination with the Utah Labor Commission in which she alleged that Discover had discriminated and was discriminating against her based on her disability and had subjected and was subjecting her to unlawful acts of retaliation.  Ms. Fletcher intended to assert such discrimination and retaliation constituted a continuing violation.

6.      Ms. Fletcher filed her Charge of Discrimination within 180 days from the last date of the alleged harm.  The Court may consider for purposes of relief all events that occurred between January 7, 2018, the 180-day jurisdictional mark, and July 6, 2018, the date of filing.  The Court may treat all other prior events as being

untimely for purposes of relief.  However, the Court may give weight to evidence of such events for evidentiary purposes.

7.      On April 21, 2020, the U.S. Equal Employment Opportunity Commission ("EEOC") issued a Notice of Right to Sue letter to Ms. Fletcher.  Ms. Fletcher is filing the instant civil action within 90 days of receipt of such Notice.

8.      Ms. Fletcher has exhausted all administrative processes and remedies.

### III.  STATEMENT OF FACTS

9.      Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 8 above as if alleged in full herein.

10.      Ms. Fletcher alleges that, on June 10, 2013, Discover hired her to work as a Quality Analyst ("analyst").   Ms. Fletcher has worked for Discover ever since that date and still works for Discover.

11.      Ms. Fletcher alleges that she has an anxiety disorder and a panic disorder, which cause symptoms that vary in degree and frequency.  Ms. Fletcher alleges that her typical daily symptoms include having difficulty thinking, difficulty regulating her emotions, difficulty concentrating on tasks and being able to stay on task and perform or complete duties, unconscious shaking and disrupted sleep.  Ms. Fletcher alleges that she occasionally experience intense episodes of anxiety and panic

attacks, which cause her to hyperventilate, to physically shake uncontrollably, and to need immediate medical treatment, such as hospitalization.  Ms. Fletcher alleges that, if other people invade her personal space and/or physically touch her, such will often trigger intense anxiety, panic attacks and the symptoms described above.

12.     Ms. Fletcher also alleges that her anxiety causes her to have significant difficulty in eating and so, to avoid uncontrollable weight loss, she must consciously remember and force herself to eat.

13.     Ms. Fletcher alleges that the supervisor she had in 2016, Suzanne Eckroth ("Eckroth"), frequently touched employees, including Ms. Fletcher, on their shoulders or backs to get their attention.  Eckroth presumably did this because the employees she supervised sat in cubicles, which were situated so that an employee's back was towards Eckroth when she entered the cubicle.

14.     Ms. Fletcher alleges that, on November 3, 2016, Eckroth entered her cubicle and touched her shoulder to get her attention.  Ms. Fletcher alleges that Eckroth's silent and unannounced approach and unwelcome touching caused Ms. Fletcher to experience an immediate and intense anxiety and a panic attack.  Soon thereafter, Ms. Fletcher needed to leave the premises; she asked to go home, and did go home.

15.     Ms. Fletcher alleges that, the following day, November 4, 2016, Eckroth again approached her in her cubicle and again touched her on the shoulder.

16.     Ms. Fletcher alleges that, on November 4, 2016, she politely but firmly told Eckroth to stop touching her.  Soon after that encounter, Ms. Fletcher left to go run on a running track, because running serves as a type of therapy for her that helps to reduce her anxiety.

17.     Ms. Fletcher alleges that, in April 2017, Eckroth came into Ms. Fletcher's cubicle and sat approximately three to four feet from her.  At one point during that interaction, Eckroth almost touched Ms. Fletcher's shoulder, but then stated in a mocking sort of way, "Oh, sorry, I almost touched you".

18.     Soon after this, Ms. Fletcher informed Dan Steenblik ("Steenblik"), Discover Human Resources Senior Advisor, of the incident.  She alleges she informed Steenblik that she had an anxiety disorder and how her condition impacts her, including how touching triggers an anxiety and panic attack reaction.

19.     Thus, Ms. Fletcher alleges that, by November 4, 2016, Ms. Fletcher first informed Discover that she had anxiety disorder.  In April 2017, Ms. Fletcher approached Steenblik about the April 2017 incident in which Eckroth had almost touched her shoulder and the prior incidents in November 2016.  Ms. Fletcher explained to Steenblik, that Eckroth's actions were an issue because they triggered her

anxiety.  Ms. Fletcher also informed Steenblik that Eckroth sat behind her and that this made her nervous that Eckroth would approach her from behind again and possibly touch her again.

20.    Ms. Fletcher alleges that, several weeks after this April 2017 incident, she changed her work desk to another area in order to have more physical distance and separation from Eckroth.  Defendant allowed Ms. Fletcher to change desks.

21.    In late 2017, Ms. Fletcher was allowed to begin working at home. Working from home is something Discover allows for all agents; this privilege was not given to Ms. Fletcher as a result of a request for reasonable accommodation, but working from home eventually became a reasonable accommodation for Ms. Fletcher.

22.    Ms. Fletcher alleges that, on October 25, 2017, she began to work from home under the supervision of Tyler August ("August"), Team Lead.

23.    Ms. Fletcher alleges that, although working from home helped to alleviate some of the anxiety she was experiencing with Ms. Eckroth, she still had to go into Discover's office building approximately twice a month for meetings.  (It was a condition of the work-at-home program that analysts needed to come in to the office two to three days per month for meetings, training, development, coaching, and other issues.

6

24.     Ms. Fletcher alleges that coming into the office became a problem for her because, when she would return, it would aggravate her anxiety.  This was because she either saw Eckroth or was aware that  Eckroth was in the vicinity and she would become fearful of Eckroth approaching her and/or touching her.

25.     Ms. Fletcher alleges that, on March 21, 2018, she asked for a reasonable accommodation in the form of being excused from coming into the office unless she had some sort of computer problem that could not be addressed or resolved on the phone with tech agents.

26.     Ms. Fletcher alleges that, several weeks later, Discover responding to her request by sending her paperwork relating to her request for accommodation, including a form for a doctor to fill out.

27.     Ms. Fletcher alleges she declined to take the form to a doctor because: (1) she was not regularly going to a doctor; (2) she was concerned that a doctor might order her to take medication for her anxiety which she might not want to take (she preferred other treatment methods, such as deep breathing and running); and (3) that a doctor would not be able to assess Ms. Eckroth's inappropriate actions and how they affected Ms. Fletcher.

28.     Thus, Ms. Fletcher alleges that, on May 8 2018, Ms. Fletcher responded that the form was not "relevant" to her request because a physician would be

unable to "assess [Eckroth's] inappropriate actions" and how they have impacted her

anxiety.  Ms. Fletcher alleges that she informed Steenblik that having a doctor fill out

the form was not an acceptable response to her request and expressed her frustration

that it had been several weeks since her initial request.

29.    Ms. Fletcher alleges that Discover denied her the reasonable

accommodation of being excused from coming into the office.

30.    Ms. Fletcher alleges that, on days in which Discover asked her to

come into the office, she then began using PTO, and did so for several months.

31.    On June 26, 2018, Steenblik e-mailed Ms. Fletcher offering to

have August notify Eckroth whenever Ms. Fletcher was going to be in the building so

that Eckroth would not be in her team area or training room.  Ms. Fletcher responded

that she would like Steenblik to "respond" to her prior request to be excused from

coming into the office.

32.    Thus, Ms. Fletcher alleges that, from approximately March 2018

to April 2019, Discover denied her request for reasonable accommodation in the form

of being excused from having to come into the office.

33.    Ms. Fletcher alleges that, in December 2018, she had problems

logging into her virtual privacy network ("VPN").  Ms. Fletcher alleges that, if she is

unable to log in to her VPN, she cannot work remotely because she does not have access to Discover's systems.

34. Ms. Fletcher alleges that, on January 3, 2019, she again had issues logging into her VPN and was advised to go to the "tech room" in the office (on the second floor of the building), as she did for any computer technology related issues.

35. Ms. Fletcher alleges she then went to the tech room on the second floor of the office. While in the building, Ms. Fletcher was told that she would have to work the entire shift in the building that day. Ms. Fletcher alleges that this visit to the office and this information caused her to experience a panic attack. Ms. Fletcher informed two managers of the situation and they had security take her downstairs for medical assessment. Ms. Fletcher alleges that she informed them that "they should have never have forced me into the building, I need to get out of here". Ms. Fletcher requested Valium in order to calm down and was informed by security personnel that they did not have Valium. Ms. Fletcher then called emergency services and was taken elsewhere to receive treatment.

36. Ms. Fletcher alleges that, in approximately April 2019, Discover issued a blanket policy excusing employees working at home from needing to come into the office.

37.     Plaintiff alleges there is no reason or possibility of undue hardship as to why Discover could not have allowed Ms. Fletcher to work from home and excused her from coming into the office well before April 2019.

38.     Ms. Fletcher alleges that, after she began making requests for reasonable accommodation, Discover began taking adverse action against her.

39.     For example, Ms. Fletcher alleges that, in November 2017, Team Coach, Sheldon Bodily ("Bodily"), reviewed one of her calls and incorrectly gave her a defect on the call.  Ms. Fletcher alleges that she contested the defect with Bodily and it was later removed and Bodily admitted it was a mistake.  Ms. Fletcher alleges that this was an attempt by Discover to retaliate against her.

40.     Ms. Fletcher alleges that analysts are paid according to pay grades and that she is a pay grade 48, with the potential to be promoted to a grade 49.

41.     Ms. Fletcher alleges that, in early 2018, Discover passed her over for a promotion to a grade 49.

42.     Ms. Fletcher alleges that, on May 14, 2018, she was trained in a new process.  Ms. Fletcher alleges that, on June 5, 2018, she received a defect during an audit performed by Bodily.  The defect was related to the process on which she had been trained three weeks prior.  Ms. Fletcher does not dispute that she committed the

defect, but alleges that the defect was given before she had had insufficient time to become proficient in the new process.

43. Ms. Fletcher alleges that she receives month-end performance evaluations, which are scored one, two, and three, with two being "meets expectations". Ms. Fletcher alleges that, for her October 2018 month-end evaluation, August gave her a score of two for the sub-category of "thought" under the Category of "leadership". Ms. Fletcher informed August that she felt this was an inaccurate scoring because she frequently makes him aware of issues and improvements that Discover could implement. August responded that he bases the score on how often a Quality Analyst answers the questions of other Quality Analysts in the team's online chat group. Regarding the October 2018 month-end evaluation, August stated that the category in question is assessed based on an analyst's participation in online group chats. August stated that he graded the analysts who most effectively and eagerly address the concerns or questions of others in the online group chats as "exceeds expectations". August indicated that he essentially looks for individuals who do not use the chat to simply get answers to questions but, also use it to assist others. Ms. Fletcher alleges August had never previously informed her of the criteria he looked at and used in scoring employees and, had August done so, she would have done what it took to qualify for a score of "exceeds expectations".

44.     Ms. Fletcher alleges that she asked August how to become a grade 49.  Ms. Fletcher alleges that August told her to be "more like Heidi", a grade 49 analyst, as an example of an employee who was performing well enough to merit being promoted to a grade 49.  Ms. Fletcher alleges that this indicates that the promotions are given "subjectively", based on who is "more like Heidi" and not based on objective criteria.

## IV.  CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### DISCOVER DENIED SOME OF MS. FLETCHER'S
### REQUESTS FOR REASONABLE ACCOMMODATION

45.     Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 44 above as if alleged in full herein.

46.     To establish a prima facie case of failure to accommodate, an employee/plaintiff must allege facts which establish, or tend to establish, that: (1) she is a person with a disability, as defined by the ADA; (2) she is "otherwise qualified" to do the job she held or desired; and (3) she requested a "plausibly reasonable accommodation".  *Punt v. Kelly Serv.,* 862 F.3d 1040, 1050 (10th Cir. 2017).  If the employee satisfies that burden, the burden shifts to the employer to present evidence "either (1) conclusively rebutting one or more elements of the prima facie case; or (2)

establishing an affirmative defense, such as undue hardship or one of the other affirmative defenses available to the employer ." *Id.*

47. Ms. Fletcher alleges that she is a person with a disability, as defined by the ADA, as amended. Under the Americans with Disabilities Act Amendments Act ("ADAAA"), disability is defined, as "(A) [having] a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) [having] a record of such an impairment; or (C) being regarded as having such an impairment". 42 U.S.C. § 12102 (2).

48. Ms. Fletcher alleges that she has an anxiety disorder and a panic disorder, which substantially limit several of her major life activities in that she regularly experiences difficulty thinking, difficulty concentrating on tasks, difficulty staying on tasks to perform or complete duties; she also alleges her anxiety disorder causes her to experience unconscious shaking and disrupted sleep. Furthermore, Ms. Fletcher also experiences occasional episodes of intense anxiety, which cause her to hyperventilate, physically shake uncontrollably, and need immediate medical treatment, such as hospitalization.

49. Ms. Fletcher also alleges that her anxiety causes her to have significant difficulty eating and so, to avoid uncontrollable weight loss, she must consciously remember and force herself to eat.

50.     Ms. Fletcher alleges she is a person with a disability, as defined under the ADA.

51.     Ms. Fletcher's allegations satisfy the first element of her claim of denial of reasonable accommodation.

52.     Ms. Fletcher alleges that she is otherwise qualified in that, with or without reasonable accommodation. she could perform the essential functions of the position she held or desired.

53.     Ms. Fletcher alleges that, in late 2016, she first informed Discover of her disability and need for accommodation.

54.     Ms. Fletcher's allegations satisfy the second element of her claim of denial of reasonable accommodation.

55.     Ms. Fletcher alleges that, in November 2016, she began requesting reasonable accommodations.   Ms. Fletcher alleges that, in April 2017, she asked to change desks, and that, in March 2018, she asked to be excused from coming into the office for any reason other than to fix computer malfunctions.  In March 2018, Ms. Fletcher asked to be excused from needing to come into the office, except when she experienced computer malfunctions, but to otherwise be able to work from home.  Ms. Fletcher continues to perform her job; however, Ms. Fletcher uses PTO to avoid going into the office when asked to do so.  Furthermore, Ms. Fletcher alleges that she has

experienced a panic attack when going to the tech room in the office for computer malfunctions.

56.    Ms. Fletcher alleges that she has requested plausibly reasonable accommodations.

57.    Ms. Fletcher's allegations satisfy the third element of her claim of denial of reasonable accommodation.

58.    Ms. Fletcher alleges Discover granted the first request, but has denied her second request.

59.    Ms. Fletcher alleges that, for Discover to have granted her second request, would not have caused an undue hardship for Discover, as a few months later, Discover did away with the requirement to come into the office for all employees working from home.

60.    Ms. Fletcher's allegations satisfy the fourth element of her claim of denial of reasonable accommodation.

61.    Ms. Fletcher's allegations state a claim of denial of reasonable accommodation.

**SECOND CAUSE OF ACTION**
**MS. FLETCHER'S DISABILITY MOTIVATED**
**DISCOVER'S DECISION TO NOT PROMOTE MS. FLETCHER**
**TO A PAY GRADE 49**

62.     Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 61 above as if alleged in full herein.

63.     In order to establish a prima facie case of discrimination based on disability, an employee/plaintiff must allege facts which establish, or tend to establish, that: (1) she is a person with a disability in that she has an impairment which is substantially limiting to a major life activity; (2) she was otherwise qualified in that she could perform the essential duties of the position she held or desired, with or without reasonable accommodation; (3) the employer subjected her to an adverse action; and (4) the circumstances surrounding the adverse action give rise to an inference of discrimination on the basis of her protected characteristic.  *McDonnell Douglas Corp. v. Green,* 411 U.S. 792,162 (1973).

64.     As previously alleged, Ms. Fletcher alleges she is a person with a disability in that she has impairments which substantially limit several major life functions.

65.     Ms. Fletcher's allegations satisfy the first element of her prima facie case.

66.     Ms. Fletcher alleges she was qualified in that, with or without reasonable accommodation, she was able to perform the essential functions of the position she held or desired.

67.     Ms. Fletcher's allegations satisfy the second element of her prima facie case.

68.     Ms. Fletcher alleges Discover subjected her to adverse employment action.  An adverse employment action includes "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.  *Piercy v. Maketa,* 480 F.3d 1192, 1203 (10th Cir. 2007) (*internal quotation omitted*).

69.     Ms. Fletcher alleges that, in June 2018, Discover considered Ms. Fletcher and two other analysts for promotion and ultimately did not select Ms. Fletcher.  Ms. Fletcher alleges that Discover subjected her to adverse employment actions in that it considered her, but did not promote her, to pay grade 49.

70.     Ms. Fletcher's allegations satisfy the third element of her prima facie case.

71.     Ms. Fletcher alleges that the circumstances surrounding the adverse employment action of not promoting her to pay grade 49 give rise to an inference of discrimination on the basis of disability.  Ms. Fletcher alleges that she was qualified for the promotion, but not selected and that, when she asked how to become a grade 49, August told her to be "more like Heidi".

72.     Ms. Fletcher alleges making decision regarding promotions and pay on the basis of subjective criteria (to be "more like Heidi") support an inference that Discover did not promote because of her disability and not because of her objective performance.

73.     Ms. Fletcher's allegations satisfy the fourth element of her prima facie case.

74.     Ms. Fletcher's allegations state a claim of discrimination based on disability.

## THIRD CAUSE OF ACTION
## DISCOVER SUBJECTED MS. FLETCHER
## TO UNLAWFUL RETALIATION

75.     Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 74 above as if alleged in full herein.

76.     In order to establish a prima facie case of retaliation, an employee/plaintiff must allege facts which establish, or tend to establish, that: (1) she engaged in protected opposition to discrimination; (2) contemporaneous with or subsequent to the protected activity, the employer subjected her to adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action.  *See Argo v. Blue Cross and Blue Shield of Kan., Inc.,* 452

F.3d 1193, 1202 (10th Cir. 2006) (*citing Burlington Northern &Santa Fe Railway Co. v. White,* 126 S.Ct. 2405, 2414-15 (2006)).

77.     Ms. Fletcher alleges that she engaged in protected activity.  The Tenth Circuit has held that requests for reasonable accommodation can be protected activity under the ADA.  "For an ADA retaliation claim, a request for accommodation is adequate if it is 'sufficiently direct and specific, giving notice that [the employee] needs a special accommodation'".  *Foster v. Mt. Coal Co., LLC,* 830 F.3d 1178, 1188 (10th Cir. 2016) (quoting *Calero-Cerezo v. U.S. Dept. of Justice,* 355 F.3d 6, 23 (1st Cir. 2004)).

78.     Ms. Fletcher alleges she asked for accommodation on at least two occasions: (1) in April 2017, when she informed Discover that she had anxiety and wanted to change desks to be away from a supervisor who had been invading her personal space and touching her; and (2) on March 21, 2018, when she asked to be allowed to continue to work from home and to be excused from coming into the office for anything besides computer technology problems.  By so doing, Ms. Fletcher engaged in protected activity.

79.     Ms. Fletcher's allegations satisfy the first element of her prima facie case.

80.     Ms. Fletcher alleges that, after requesting reasonable accommodations, Defendant took adverse action against her.  In *Burlington Northern & Santa Fe Railway Co. v. White,* 548 U.S. 53, 68 (2006), the Supreme Court set forth the standard to be used in determining what constitutes an adverse employment action. The action must be materially adverse to a reasonable employee.  *Id.*  The Supreme Court explained that "materially adverse" means that the harm must be significant.  *Id.* It also explained that the determination must be made objectively, and, thus, must be measured against how a "reasonable worker" would feel or act.  *Id.*  An employee must show that the action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination".  The Supreme Court emphasized that whether any given act constituted retaliation may depend upon the particular 'circumstances.  *Id.* at 69.

81.     Ms. Fletcher alleges that, after she engaged in protected activity, Defendant took adverse actions against her, including (1) that Ms. Fletcher received a defect on a process she had been trained on only three weeks earlier; (2) that August graded Ms. Fletcher only as a "meets expectations" on an aspect of her October 2018 month-end review; (3) that, on June 18, 2018, Ms. Fletcher was not selected for the pay grade 49 promotion; (4) that, to become a pay grade 49, August told Ms. Fletcher to be "more like Heidi".  With respect to Discover not selecting Ms. Fletcher for the

promotion to a pay grade 49 on June 18, 2018, Ms. Fletcher alleges that this is a

significant enough event to dissuade an individual from engaging in a protected

activity and, thus, qualifies as adverse action.

82.     Ms. Fletcher's allegations satisfy the second element of her prima

facie case.

83.     Ms. Fletcher alleges that a causal connection exists between her

protected activity and the adverse action.  A "causal connection maybe demonstrated

by evidence of circumstances that justify an inference of retaliatory motive, such as

protected conduct closely followed by an adverse action".  *O'Neal v. Ferguson Constr.*

*Co.,* 237 F.3d  1248, 1253 (10th Cir. 2001) (*quoting Burrus v. United Tel. Co. of*

*Kansas, Inc.,* 683 F.2d 339, 343 (10th Cir. 1982)).  For example, a one-and-a-half

month period between the protected activity and adverse action may establish the

inference.  In contrast, a three-month period, alone, is insufficient.  *Id. (quoting*

*Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1179 (10th Cir. 1999)).  On March 21,

2018, Ms. Fletcher made a request for a reasonable accommodation.  There is

approximately five to six weeks between the protected activity and adverse action.  As

such, the evidence supporting an inference that the events occurred closely enough to

establish a causal connection.

84.    Ms. Fletcher's allegations satisfy the third element of her prima facie case.

85.    Assuming Discover has or can articulate a legitimate, non-retaliatory reason for its actions, the burden will shift back to Ms. Fletcher to show that whatever reason Discover may articulate is a pretext.

86.    Ms. Fletcher may raise an inference that the employer's explanation is pretextual by showing: (1) the Defendant's articulated reason is not credible; or (2) It is more likely than not that the Defendant's actions were motivated by a discriminatory reason.  *McKnight v. Kimberly Clark Corp.,* 149 F.3d 1125, 1129 (10th Cir. 1998).  Ms. Fletcher alleges that the selection process used to promote employees from a pay grade 48 to a pay grade 49 was subjectively based on which analyst was "more like Heidi".  Such subjective reasons support an inference that Defendant's explanation is pretextual.

87.    Ms. Fletcher's allegations state a claim of retaliation.

## V.  DAMAGES

88.    Ms. Fletcher alleges Discover's actions and inactions have caused her various losses, injuries and other damages, including lost wages, lost benefits, extra stress and worry, frustration and other types of emotional distress, and an aggravation of her anxiety disorder and panic disorder.

## V.  RELIEF REQUESTED

Accordingly, based on the above allegations, claims and damages, Ms.

Fletcher requests the following relief, specifically an Order and Judgment:

1.  Declaring that Discover discriminated against Ms. Fletcher on the basis of her disability and retaliated against her, in violation of the ADA;

2.  Awarding Ms. Fletcher the lost wage and lost benefit differential from the time Defendant did not promote Ms. Fletcher until it does promote Ms. Fletcher, or for a period of two years, whichever occurs first;

3.  Awarding Ms. Fletcher such other relief as may be just and equitable, including damages for emotional distress and aggravation of her anxiety disorder and panic disorder;

4.  Awarding Ms. Fletcher her reasonable attorney's fees and costs.

DATED this 17th day of July, 2020.


_/s/ David J. Holdsworth_____
David J.  Holdsworth
*Attorney for Plaintiff*

## VERIFICATION

Amy Fletcher, being first duly sworn, upon her oath, deposes and says that she is the Plaintiff in the above-entitled action, that he helped prepare and has read the foregoing COMPLAINT and understands the contents thereof, and the statements made therein are true to the best of her knowledge and recollection.


_____

Amy Fletcher


SUBSCRIBED AND SWORN to before me, a Notary Public, this _____ day of _____, 20___.


_____

NOTARY PUBLIC

MY COMMISSION EXPIRES:              RESIDING AT: _____

_____