UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| AMY FLETCHER,<br><br>Plaintiff,<br><br>v.<br><br>DISCOVER FINANCIAL SERVICES,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 16)**<br><br>Case No. 2:20-cv-00512<br><br>Magistrate Judge Daphne A. Oberg |

Plaintiff Amy Fletcher brought this action against her employer, Discover Financial Services ("Discover"), under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. (*See* Compl., Doc. No. 2.) Ms. Fletcher asserted claims for failure to accommodate, disability discrimination (based on failure to promote), and retaliation. (*Id.* ¶¶ 45–87.) Discover moved for summary judgment on all claims. (Mot. for Summ. J. ("Mot."), Doc. No. 16.) Ms. Fletcher chose not to pursue her second and third claims—disability discrimination and retaliation—but opposed the motion with regard to the failure-to-accommodate claim. (Pls.' Mem. in Opp'n to Def.'s Mot. for Summ. J. ("Opp'n") 1–2, Doc. No. 18.) The court[1] held a hearing on the motion on May 17, 2022. (*See* Doc. No. 22.)

Discover's summary judgment motion is granted as to the claims Ms. Fletcher chose not to pursue: disability discrimination and retaliation. And because Ms. Fletcher failed to engage in the interactive process, she is unable to establish a prima facie case as to her failure-to-accommodate claim. Accordingly, Discover's motion is also granted as to this remaining claim.

---

[1] The parties consent to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. No. 11.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit." *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013) (internal quotation marks omitted). "A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Id.* (internal quotation marks omitted). In evaluating a motion for summary judgment, the court views "the facts in the light most favorable to the nonmovant and draw[s] all reasonable inferences in the nonmovant's favor." *Jones v. Norton*, 809 F.3d 564, 573 (10th Cir. 2015). But "where the non moving party will bear the burden of proof at trial on a dispositive issue that party must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998) (internal quotation marks omitted).

> In making or responding to a summary judgment motion:
>
> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

RELEVANT FACTS

At all relevant times, Mr. Fletcher was an employee at Discover, where she worked as a quality analyst. (Mot. Statement of Undisputed Material Facts ("SMF") ¶ 2, Doc. No. 16.) Ms. Fletcher claims she is disabled due to anxiety and a panic disorder, and she was diagnosed with these disabilities in 2003 or 2004. (*Id.* ¶ 5.) On November 3, 2016, Suzanne Eckroth, Ms. Fletcher's work supervisor, approached Ms. Fletcher from behind and touched her on the shoulder to get her attention.[2] (*Id.* ¶ 6.) This touching triggered Ms. Fletcher's anxiety and caused her to have a panic attack. (*Id.*) The next day, Ms. Eckroth approached Ms. Fletcher and again touched her shoulder. (*Id.* ¶ 7.) Ms. Fletcher told Ms. Eckroth she had an anxiety disorder and asked Ms. Eckroth to stop touching her. (*Id.*) Ms. Eckroth did not touch Ms. Fletcher again. (*Id.* ¶ 8.) But in April 2017, Ms. Eckroth almost touched Ms. Fletcher's shoulder, and stated "[O]h, I'm sorry, Amy. I almost touched you again." (*Id.*) In April 2017, Ms. Fletcher informed Dan Steenblik (a Discover human resources employee) of the three incidents.[3] (*Id.* ¶ 9; Decl. Dan Steenblik ¶ 3, Doc. No. 16-4.)

---

[2] Ms. Fletcher does not dispute this statement of material fact, but alleges it is incomplete. She claims Ms. Eckroth frequently touched her before this November 3 incident. But Ms. Fletcher does not cite the record in support of this claim; she cites her own complaint. (Opp'n Resp. to Def.'s Statement of Allegedly Undisputed Material Facts ("RSMF") ¶ 6, Doc. No. 18). And the party with the burden must go beyond the pleadings in opposing summary judgment. *See McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998). Moreover, even if true, this additional fact does not change the outcome.

[3] Ms. Fletcher does not dispute this fact, but contends it is incomplete. (RSMF ¶ 9, Doc. No. 18.) She contends she informed Discover she had an anxiety disorder on November 4, 2016. (*Id.*) In April 2017, she reported the incidents to Mr. Steenblik and explained they triggered her anxiety. (*Id.*) She also informed Mr. Steenblik that she felt nervous because Ms. Eckroth sat behind her and might approach her from behind and possibly touch her. (*Id.*) But Ms. Fletcher does not cite to record evidence supporting these claims. Moreover, even if these statements were fully supported by the record, they do not change the outcome.

3

In October 2017, Ms. Fletcher began working from home as part of Discover's work-at-home program. (SMF ¶ 10, Doc. No. 16.) Her supervisor changed from Ms. Eckroth to Tyler August. (*Id.*) Employees participating in this program were still required to go into Discover's office for various reasons, such as team building activities. (*Id.* ¶ 11.) On March 21, 2018, Ms. Fletcher asked for an accommodation modifying the requirements of her work-at-home position. (*Id.* ¶ 12.) She asked that she only be required to go into the office if she had computer problems which could not be addressed over the phone, but that she otherwise be excused from in-office requirements.[4] (*Id.* ¶ 12.) On April 10, 2018, Ms. Fletcher sent a follow-up email to Mr. Steenblik, after receiving no response to her request. (Ex. C to Steenblick Decl., Doc. No. 16-4, at 14–15.) Mr. Steenblik responded two days later, indicating he would review his emails to locate her request. (*Id.* at 14.) Upon finding it, he apologized to Ms. Fletcher for the delay and told her he forwarded her request to Connie Tregeagle, who handles accommodations requests. (*Id.* at 13–14.)

The following Monday, April 16, 2018, Ms. Tregeagle called Ms. Fletcher and left a voicemail explaining the reason for her call and asking Ms. Fletcher to call her back. (Suppl. Decl. of Connie Tregeagle in Supp. of Mot. for Summary J. ("Tregeagle Suppl. Decl.") ¶ 4, Doc. No. 19-2 at 3.) Ms. Fletcher did not return her call or otherwise reach out to Ms. Tregeagle. (*Id.* ¶ 5.) Ms. Tregeagle arranged to have Discover's accommodation forms sent to Ms. Fletcher on April 16, 2018.[5] (*Id.* ¶ 4.)

---

[4] Ms. Fletcher does not dispute this fact, but contends it is incomplete. (RSMF ¶ 12, Doc. No. 18.) She alleges going into the office would aggravate her anxiety and fear of Ms. Eckroth touching or approaching her. (*Id.*) But Ms. Fletcher cites to no record evidence supporting her claim; she cites her own complaint. Further, this allegation does not change the outcome.

[5] Although Ms. Tregeagle arranged to have the forms sent, there is no confirmation the forms were actually sent to Ms. Fletcher on or around April 16, 2018. The record shows only that in a

4

On May 7, 2018, Ms. Fletcher emailed Mr. Steenblik and Ms. Tregeagle, stating she had not received a reply to her earlier request. (Tregeagle Suppl. Decl. ¶ 5, Doc. No. 19-2.) That same day, Ms. Tregeagle emailed a Request for Accommodation(s) Form to Ms. Fletcher.[6] (*Id.*; SMF ¶ 13, Doc. No. 16.) This form included a section for Ms. Fletcher's physician to complete. (SMF ¶ 13, Doc. No. 16.) But Ms. Fletcher refused to complete the form or to have her physician do so.[7] (*Id.* ¶ 14.) Instead, she emailed Mr. Steenblik the next day, confirming she received the form, but claiming it was "not relevant" to her request. (*Id.*) Ms. Fletcher noted it was difficult for her to be in an office where Ms. Eckroth could wander freely, creating a hostile work environment—and explained a physician would not be able to prescribe or assess Ms. Eckroth's inappropriate actions. (*Id.*; Ex. C to Steenblick Decl., Doc. No. 16-4 at 13.) On May 10, 2018, Mr. Steenblik responded that he would touch base with Ms. Tregeagle and follow up. (Ex. C to Steenblik Decl., Doc. No. 16-4 at 13.)

On June 26, 2018, Mr. Steenblik proposed an accommodation to minimize contact between Ms. Fletcher and Ms. Eckroth: on days Ms. Fletcher would be in the office, Mr. August

---

later email to Mr. Steenblik, Ms. Fletcher noted Ms. Tregeagle "once again" sent Ms. Fletcher an accommodation request form. (*See* Ex. C. to Steenblick Decl., Doc. No. 16-4, at 13.)

[6] Ms. Fletcher does not dispute this fact, but contends it is incomplete. (RSMF ¶ 13, Doc. No. 18.) Citing only to her complaint, she claims Discover did not act in a timely manner after she made her March 21, 2018 request because it waited until May 7, 2018 to send her an accommodation form. (*Id.*) This claim is inconsistent with Ms. Fletcher's May 8, 2018 email noting she had "once again" received an accommodation form. (*See* Ex. C. to Steenblick Decl., Doc. No. 16-4, at 13.) And regardless, Ms. Fletcher does not show how any alleged delay impacts the fact that she refused to meaningfully engage in the interactive process.

[7] Ms. Fletcher does not dispute this fact, but contends it is incomplete. (RSMF ¶ 14, Doc. No. 18.) She claims she declined to take the form to a doctor because: (1) she was not regularly seeing a doctor; (2) a doctor would be unable to assess Ms. Eckroth's actions or how they affected Ms. Fletcher; and (3) a doctor might prescribe medication. (*Id.*) She also claims she explained this to Discover. (*Id.*) But Ms. Fletcher has not established these reasons legally excuse her failure to engage in the interactive process.

5

would notify Ms. Eckroth and she would avoid Ms. Fletcher's team area or training area.[8] (SMF ¶ 16, Doc. No. 16; Ex. D to Steenblick Decl., Doc. No. 16-4, at 17.) Ms. Fletcher rejected this proposal on July 9, noting it was "not acceptable nor never could be acceptable." (SMF ¶ 17. Doc. No. 16; Ex. D to Steenblick Decl., Doc. No. 16-4, at 17.) The record shows no further discussions between the parties regarding accommodations.

ANALYSIS

To succeed on a failure-to-accommodate claim, a plaintiff must make a prima facie showing that "1) she was disabled, 2) she was otherwise qualified, 3) she requested a plausibly reasonable accommodation, and 4) [the employer] refused to accommodate her disability."[9] *Aubrey v. Koppes*, 975 F.3d 995, 1005 (10th Cir. 2020). Once a plaintiff establishes a prima facie case, the burden shifts to the employer to either rebut an element of the prima facia case or to establish an affirmative defense. *Id.* Discover does not dispute the fact of Ms. Fletcher's disability, its knowledge of the disability, or that Ms. Fletcher was otherwise qualified. (Mot. 16, Doc. No. 16.) But Ms. Fletcher's prima facie case fails as a matter of law, according to Discover, because she failed to engage in the interactive process. (*Id.*)

The assessment of a plaintiff's prima facie case involves an analysis of the interactive process. *Aubrey*, 975 F.3d at 1007; *cf. Nelson v. Salt Lake Cnty.*, No. 2:18-cv-00189, 2022 U.S. Dist. LEXIS 59980, at *21 (D. Utah Mar. 30, 2022) (unpublished) ("An employee can satisfy the

---

[8] Ms. Fletcher disputes this statement as to the characterization that she did not cooperate. (*See* SMF ¶ 16, Doc. No. 16; RSMF ¶ 16, Doc. No. 18.) However, she does not dispute that Discover offered this accommodation and she rejected it. (*See* RSMF ¶ 16, Doc. No. 18.)

[9] Discover contends a slightly different prima facie standard applies, where Ms. Fletcher must show (1) she is a qualified individual with a disability; (2) her employer was aware of her disability; and (3) her employer failed to reasonably accommodate the disability. (Mot. 16, Doc. No. 16.) Because Discover cites a Seventh Circuit case in support of this standard, *Kotwica v. Rose Packing Co.*, 637 F.3d 744 (7th Cir. 2011), the Tenth Circuit's formulation is used instead.

third element if he or she shows that the employer failed to engage in an interactive process with the employee regarding potential reasonable accommodations."). Once an employee requests an accommodation, the employer has "a duty to engage in good faith with [the employee] in an interactive process to determine her limitations and consider whether the accommodations she requested, or perhaps others that might come to light during this interactive process," would allow the employee to continue working. *Aubrey*, 975 F.3d at 1007. While the interactive process varies in form depending on the situation, it is a collaborative process requiring "good faith participation of both the employer and employee." *Id.* at 1007, 1009. Both have "an affirmative obligation to undertake a good faith back-and-forth process . . . with the goal of identifying the employee's precise limitations and attempting to find a reasonable accommodation for those limitations." *Id.* at 1009. This process is "imperative because each side will possess different information, all of which is critical to determining whether there is a reasonable accommodation that might permit the disabled employee to perform the essential functions of her job." *Id.* at 1007.

A party who "'obstructs or delays the interactive process' or 'fails to communicate, by way of initiation or response'" may not be acting in good faith. *Nelson*, 2021 U.S. Dist. LEXIS 51837, at *13–14 (quoting *Smith v. Midland Brake Inc.*, 180 F.3d 1154, 1172 (10th Cir. 1999)). If an employer causes the breakdown in the interactive process, and there was a request for reasonable accommodation, the employer will be liable for failing to accommodate. *See Frazier v. Simmons*, 254 F.3d 1247, 1261–62 (10th Cir. 2001). But if the employee is the cause of the breakdown, the employer will not be liable. *Templeton v. Neodata Servs.*, 162 F.3d 617, 619 (10th Cir. 1998).

Determining the cause of a breakdown in the interactive process is a fact-intensive question appropriate for summary judgment. *Cf. Griego v. Kohl's, Inc.*, No. 21-cv-00045, 2021 U.S. Dist. LEXIS 206152, at *16–17 (D. Colo. Sep. 27, 2021) (unpublished). When making this determination, courts "should attempt to isolate the cause of the breakdown and then assign responsibility." *Everett v. Murphy*, No. 15-cv-372, 2016 U.S. Dist. LEXIS 174912, at *10–12 (E.D. Okla. Dec. 19, 2016) (unpublished) (internal quotation marks omitted). The "last act in the interactive process" is not necessarily the cause of the breakdown. *Griego*, 2021 U.S. Dist. LEXIS 206152, at *20 (internal quotation marks omitted). Instead, courts must look at the interactive process "as a whole" and, construing the facts in favor of the nonmoving party, "determine whether the evidence requires a finding that one party's bad faith caused the breakdown." *Id.* (internal quotation marks omitted).

Courts have found employers caused the breakdown when, for example, the employer offered a "take it or leave it" ultimatum or failed to discuss the employee's specific limitations and engage with the employee. *See id.* at *19–20 (collecting cases); *Seward v. Roy City*, No. 1:17-cv-00109, 2020 U.S. Dist. LEXIS 11572, at *11–12 (D. Utah Jan. 22, 2020) (unpublished). On the other hand, the employee causes the breakdown if she "fail[s] to provide medical information necessary to the interactive process." *Templeton*, 162 F.3d at 619; *see also Seward*, 2020 U.S. Dist. LEXIS 11572, at *11 ("[I]f [the employer] had simply asked [the employee] to go to a doctor to obtain the medical information necessary to determine what reasonable accommodation may be required, then [the employee's] refusal could very well preclude his interactive process claim."); *Nguyen v. City & Ctny. of Denver*, 286 F. Supp. 3d 1168, 1190 (D. Colo. 2017) (noting an employee would be the cause of the breakdown if she "either refused or failed to provide relevant medical information"); *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d

8

1130, 1136 (7th Cir. 1996) ("Where the missing information is of the type that can only be provided by one of the parties, failure to provide the information may be the cause of the breakdown and the party withholding the information may be found to have obstructed the process."). In other words, where "the employer does not obstruct the process, but instead makes reasonable efforts both to communicate with the employee and provide accommodations based on the information it possessed, ADA liability simply does not follow." *Beck*, 75 F.3d at 1137.

Even viewing the evidence and all reasonable inferences in Ms. Fletcher's favor, Discover cannot be held liable for failure to accommodate. Ms. Fletcher caused the breakdown in the interactive process. Discover's actions show it engaged in the interactive process in good faith.[10] *See Williams v. Prison Health Servs.*, 159 F. Supp. 2d 1301, 1310 (D. Kan. 2001) ("[M]eeting with the employee, requesting information about the employee's condition and limitations, indicating to the employee that the employer is considering the request, and offering and discussing reasonable alternatives all demonstrate good faith."). Ms. Fletcher claims Discover's paperwork obstructed the interactive process because Discover already knew the nature of her disabilities and limitations. (Opp'n 35–36, 38, 40, Doc. No. 18.) But the record does not support this claim. Even if Discover generally knew of Ms. Fletcher's disability, it was entitled to request medical information about her resulting limitations—information only Ms. Fletcher could provide. Discover's forms would have facilitated the interactive process; they were not an obstruction. *Cf. Williams*, 159 F. Supp. at 1310–11 (D. Kan. 2001) (noting that

---

[10] Although it appears from the record that Discover could have responded more quickly to Ms. Fletcher's accommodation request, Ms. Fletcher alleges the breakdown in the interactive process caused by Discover was its failure to give Ms. Fletcher the accommodation she requested, after she rejected Discover's proposal. (Oral Argument at 49:30–51:39, Summ. J. Hr'g (May 17, 2022).) As explained below, an employer's refusal to agree to the precise accommodation requested is insufficient to show that employer caused a breakdown in the interactive process.

9

requiring an employee to fill out FMLA paperwork did not impede the interactive process). Discover did not offer Ms. Fletcher a "take it or leave it" ultimatum, nor did it refuse to consider her limitations (to the extent any can be gleaned from her communications). Instead, Discover tried to learn more about Ms. Fletcher's specific limitations and suggested an accommodation based on the limited information it possessed.

The interactive process required Discover and Ms. Fletcher to collaborate in good faith to try to identify Ms. Fletcher's precise limitations and find a reasonable accommodation for them. To this end, Discover's requests were justified—and the breakdown in the interactive process is attributable to Ms. Fletcher's failure to participate in the process and her refusal to provide information about the extent of her limitations. Ms. Fletcher's refusal to participate in this back-and-forth process ended the dialogue. Ms. Fletcher based her refusal to provide information about her limitations on her own speculation that a physician would not be able to opine on her situation, her claim that she did not have a regular physician, and her concern that a physician might suggest she take medication. (Opp'n 36–37, Doc. No. 18.) But none of those reasons excuse an employee of her legal obligation to participate in the interactive process by providing information on her limitations. And not only did Ms. Fletcher refuse to have a physician fill out the form, she, herself, provided no additional information as to her limitations.[11]

The only additional information Ms. Fletcher provided in connection with her accommodate request is that she felt nervous that Ms. Eckroth was free to wander throughout the

---

[11] This is not a case where an employer unreasonably relied on its own policies and procedures. Had Ms. Fletcher refused to fill out the form, but provided the information in another manner, the result of this case would likely be different. Instead, this is a case where the employee entirely refused to engage with her employer about the specific limitations resulting from her disability.

building and approach Ms. Fletcher's cubicle when Ms. Fletcher was in the office. (Ex. C. to Steenblik Decl., Doc. No. 16-4 at 13). In totality, Discover knew (1) of this claim of nervousness, (2) Ms. Fletcher had a panic and anxiety disorder, (3) when Ms. Eckroth touched Ms. Fletcher it caused her to have a panic attack, (SMF ¶¶ 5–7, Doc. No. 16), (4) Ms. Fletcher did not want to be in the office alone with Ms. Eckroth, (5) Ms. Fletcher was nervous having Ms. Eckroth sit directly behind her, and (6) Ms. Fletcher was worried Ms. Eckroth would touch her again, (Ex. A. to Steenblik Decl., Doc. No. 16-4 at 6). Working with this sparse information about Ms. Fletcher's limitations, Discover suggested an alternative accommodation: Ms. Eckroth would avoid Ms. Fletcher's work areas on Ms. Fletcher's days in the office.[12] This accommodation appears to specifically address the limitations Ms. Fletcher identified. But when presented with this option, Ms. Fletcher again refused to engage in any discussion. She simply rejected the option as unacceptable—without explaining why it was unacceptable or otherwise continuing the dialogue about accommodations which might enable her to continue working.

     Ms. Fletcher argues she did not need to discuss alternative accommodations where Discover knew of her disabilities and her requested accommodation was reasonable and was the only logical solution. But as noted above, while Discover knew of her disabilities, it did not know the specific limitations caused by those disabilities. That was the purpose behind the

---

[12] Ms. Fletcher maintains Discover did not intend to honor this proposal, as evidenced by the fact that she was once required to work an entire shift at the office when her computer was not functioning (on a remote workday). (Opp'n 13–14, 45–46, Doc. No. 18.) This argument is not persuasive. First, there was no accommodation in place at that time. Second, Discover cannot be faulted for failing to excuse Ms. Fletcher from a work shift or allowing her to leave partway through a shift to return home, when there was no accommodation in place. That event does not show Discover's accommodation suggestion was faulty or in bad faith. Instead, it demonstrates the need for the interactive process. Discover may well have been willing to provide broader accommodations if Ms. Fletcher had engaged in the interactive process and provided information regarding her limitations.

interactive process Ms. Fletcher refused to engage in. From the limited information Ms. Fletcher provided, Discover could not know the universe of what triggered Ms. Fletcher's anxiety disorder and panic attacks or how to prevent them. For instance, Discover could not know whether it was being in close proximity to Ms. Eckroth, having Ms. Eckroth touch her, having Ms. Eckroth stand behind her—or being in close proximity to anyone, being touched in general, or having anyone stand behind her—that triggered Ms. Fletcher's anxiety and panic disorder. This type of information would be critical to any attempt to find a reasonable accommodation which would permit Ms. Fletcher to perform the essential duties of her job.

Next, it is inconsistent with an employee's obligations to demand a specific accommodation then end the discussion, refusing to further engage in the interactive process. Even assuming Ms. Fletcher's requested accommodation was reasonable, she could not refuse to provide information on her specific limitations. Stopping the dialogue in this manner deprived Discover of the ability to assess reasonable options. If it were enough to suggest a specific accommodation and end the discussion, any employee would be entitled to her preferred accommodation so long as it was reasonable. But an employee is not entitled to her preferred accommodation or even the best accommodation; an employer need only offer a reasonable accommodation.[13] *See Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1261 (10th Cir. 2001) ("[A]n employer is not required to always provide the employee with the best possible accommodations or in the specific manner the employee requested. . . . It has broad discretion in

---

[13] Ms. Fletcher argues her requested accommodation was presumptively reasonable and would not have created an undue hardship for Discover where, in April 2019, Discover issued a blanket policy excusing all work-at-home employees from coming into the office. (Opp'n 46, Doc. No. 18.) But, as explained, simply requesting an accommodation (even one that, in hindsight, turns out to be reasonable) while refusing to engage in the interactive process to determine the scope of the employee's limitations, is insufficient. Thus, this fact does not change the outcome.

determining which alternative accommodation should be provided."). If Ms. Fletcher had engaged in the interactive process and provided information as to her limitations, the parties might have identified an alternative, reasonable accommodation—or they might have determined Ms. Fletcher requested the only reasonable accommodation. But Ms. Fletcher cannot unilaterally demand a single, preferred accommodation, refuse to provide information as to her specific limitations, refuse to discuss alternative accommodations with Discover, and then claim Discover failed to accommodate her disabilities.

The record establishes Ms. Fletcher impeded the interactive process such that Discover cannot be held liable under the ADA. Accordingly, Ms. Fletcher cannot establish a prima facie claim for failure to accommodate and Discover is entitled to summary judgment.

## CONCLUSION

Where the undisputed record establishes Discover is entitled to judgment as a matter of law, the court GRANTS Discover's Motion for Summary Judgment, (Doc. No. 16), and enters judgment in favor of Discover on all claims.

DATED this 26th day of August, 2022.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge